AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE CELLULAR DEVICE DESCRIBED<br>IN ATTACHMENT A, CURRENTLY LOCATED AT CINCINNNATI<br>POLICE DEPARTMENT, LOCATED AT 801 LINN STREET,<br>CINCINNATI, OH 45203 | )<br>)<br>)<br>)<br>)<br>)    Case No. **1:22-MJ-00129** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 373 | Solicitation to Commit a Crime of Violence |
| 18 U.S.C. 1512 | Tampering with a Witness |
| 21 U.S.C. 841(b)(1)(B), 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Brandon R. Cook*
_____
*Applicant's signature*

Brandon Cook TFO, DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____**FaceTime Video**_____ *(specify reliable electronic means)*.

Date: **Mar 4, 2022**

*Stephanie K. Bowman*
_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
_____
*Printed name and title*

## <u>ATTACHMENT A</u>

The property to be searched is a black and blue Apple iPhone, electronically encoded with SIM code number 8901260041923798797F, as pictured in Attachment A, hereinafter the "Device." The Device is currently located at Cincinnati Police Department, 801 Linn Street, Cincinnati, OH 45203.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

1.     All records on the Device described in Attachment A that relate to violations of possession of controlled substances (21 USC 841(b)(1)(A) and 21 USC 841(C) and murder for hire (18 USC 373 and 18 USC 1512) and involve Jimmie COLLINS since he obtained The **Device**, including:

     a.    Any records, information, data, and communications related to the delivery and sale of cocaine and/or fentanyl by Jimmie COLLINS and members of the drug trafficking organization;

     b.    Any records, information, data, and communications relating to the attempted identification, location, and potential murder of the informant against COLLINS;

     c.    All records, information, data and communication relating to COLLINS' possession, storage, use, or access to firearms and ammunition;

     d.    Communications between COLLIS and/or WILKINSON to third parties related to obstructing, impeding, interfering, or influencing the investigation and judicial proceedings of COLLINS;

     e.    lists of customers and related identifying information;

     f.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     g.    any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

  h. any information recording Jimmie COLLINS's schedule or travel from the obtainment of The Device to the present;

  i. all bank records, checks, credit card bills, account information, and other financial records.

 2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

 As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR DEVICE DESCRIBED IN ATTACHMENT A, CURRENTLY LOCATED AT CINCINNNATI POLICE DEPARTMENT, LOCATED AT 801 LINN STREET, CINCINNATI, OH 45203 | Case No. __1:22-MJ-00129__ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Brandon R. Cook, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Police Officer with the Cincinnati (Ohio) Police Department, currently assigned as a Task Force Officer (TFO) with the DEA. I have been assigned to the DEA since February of 2021 and I have been a police officer for over 13 years, beginning in 2008. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I earned a Bachelor of Arts Degree from Ohio State University in 2007. In 2008, I graduated from the Cincinnati Police Department's Police Academy and am

certified as a police officer through the Ohio Police Officer Training Academy (OPOTA). During the course of my law enforcement career, I have received hundreds of hours in various drug trainings, in addition to training in the use, preparation, and execution of search and seizure warrants. During my tenure as a Cincinnati Police Officer, I have participated in the investigation of drug trafficking organizations that resort to violent crimes to facilitate their offenses, and who are involved in murder for hire schemes as well as the attempted identification and murder of criminal witnesses. As a DEA TFO, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. During my tenure as a Cincinnati Police Officer and with the DEA, I have participated in several criminal investigations seeking evidence of violations of the Controlled Substances Act (Title 21, of the United States Code). Many of the investigations I have been part of included the seizure and analysis of evidence contained on electronic devices, such as computers, tablets, cell phones, and other electronic storage media.

3.      The facts in this affidavit come from my personal observations, my training and experience, information from a confidential informant, and information obtained from other officers, agents, and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a black and blue Apple iPhone, electronically encoded with SIM card number 8901260041923798797F, as pictured in Attachment A, hereinafter the "**Device**."  The **Device** is currently located at Cincinnati Police Department, 801 Linn Street, Cincinnati, OH 45203.

5.      The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

6.      In the spring of 2021, I began an investigation into a drug trafficking organization operating in the greater Cincinnati, OH area. I, and other law enforcement agencies, received information from a confidential informant[1] (CI) about Maria WILKINSON's involvement in kilogram-level cocaine sales. The informant has provided information on this and other cases that has been independently verified by law enforcement. Additionally, information provided by the informant has led to the seizure of controlled substances and proceeds from the sale of controlled substances. As such, I believe the information provided by the informant to be true, accurate, and reliable.

**CONTROLLED TELEPHONE CALL TO MARIA WILKINSON:**

7.      On July 16, 2021, I arranged for the confidential informant to make a one-party, consensually recorded telephone call to Maria WILKINSON at cellular telephone number (513) 580-9200 to arrange a future purchase of cocaine. During the telephone call, WILKINSON told the informant that she needed to make a phone call to determine the price for the amount of cocaine requested. WILKINSON told the CI she would call him/her back shortly. Below is a transcript of a portion of the telephone call:

---

[1] - The confidential informant is cooperating with law enforcement for case consideration for a pending/future criminal charge in Hamilton County, Ohio Common Pleas Court. The informant has previously been convicted of felony offenses, including drug trafficking.

| | |
|---|---|
| CI | Ah, oh, shit shit shit. Oh oh oh that's what it was about, that's what it was about. Man I went to, I went to reup yesterday. Why this shit was so shakey? It didn't make no sense. |
| WILKINSON | Man swear |
| CI | Everything was shake. Not one boulder. |
| WILKINSON | On the coke side? |
| CI | Yeah |
| WILKINSON | I got some (laughs). |
| CI | What's the, what's the ticket lookin like? |
| WILKINSON | Uh, let me see real quick cause it's probly gonna drop. It's, I think, I think they dropped it anyways. Let me see real, let me make sure they dropped it before I give you a number. |

8.    A few minutes later, the CI received a call from WILKINSON and she provided him/her the current price. It should be noted, this second telephone call was not recorded or monitored by law enforcement. Based on the CI's history of reliability, I believe the information reported to law enforcement is accurate and reliable.

9.    Following the above sequence of phone calls, I submitted a federal administrative subpoena to the service provider for WILKINSON's cellular telephone number for historical call records.  I located the first phone call between the CI and WILKINSON based on the time and date I initiated the phone call. Based on my review of the call records, I learned WILKINSON made a single phone call between the two (2) calls with the CI. The records showed WILKINSON called cellular telephone number (513) 492-1467 and spoke to the user of this cellular telephone

briefly. These records also confirm the information provided by the CI about WILKINSON calling him/her back.

10.     Narcotics Unit investigators searched law enforcement databases and learned Jimmie COLLINS has previously used cellular telephone number (513) 492-1467. Based on the phone calls between WILKINSON and the CI, and WILKINSON calling COLLINS' cellular telephone in between those calls, I believe WILKINSON called COLLINS to inquire about the price of cocaine.

11.     On July 21, 2021, I appeared before Hamilton County Common Pleas Judge Lisa Allen, who reviewed and signed a search warrant for COLLINS' cellular telephone. The search warrant authorized investigators to collect subscriber information, historical call records, historical location information, and real-time GPS location (ping) information.

**CONTROLLED PURCAHSE OF COCAINE FROM WILKINSON AND COLLINS:**

12.     On August 9, 2021, I met with the CI to conduct a controlled cocaine purchase from WILKINSON. I arranged for the CI to call WILKINSON at cellular telephone number (513) 580-9200 to arrange the purchase of five (5) ounces of cocaine. During the phone call, WILKINSON instructed the CI to meet her at a location in the Westwood neighborhood of Cincinnati, OH. Following this phone call, surveillance officers stated WILKINSON had left from her residence and traveled to 2529 Hollenshade Avenue, Cincinnati, OH 45211. Based on previous investigative efforts, physical and electronic surveillance, I am aware this is Jimmie COLLINS' residence.

13.     At this time, I searched the CI and CI's vehicle for contraband and U.S. currency with nothing found. I also provided the CI $5000 in recorded U.S. currency to be used during the

controlled cocaine purchase. The CI then began traveling to the meeting location while under the control and monitoring of law enforcement.

14.     At approximately 3:56 PM, the CI contacted WILKINSON to inform her of his/her arrival. WILKINSON answered the telephone call and stated she was one (1) minute away from the meeting location. The CI remained at this location for approximately ten (10) minutes without WILKINSON's arrival. The CI then contacted WILKINSON to inquire about her location. WILKINSON told the CI she did not have enough cocaine at her location and that "he" needed to get more for her. Based on my training and experience, I believe WILKINSON was telling the CI her source of supply needed to travel to obtain additional cocaine so that WILKINSON could complete the sale. Based on WILKINSON calling COLLINS on July 16, 2021 to provide the CI a price for the purchase of cocaine and the fact that WILKINSON was at COLLINS' residence at the time of this phone call, I believe COLLINS was WILKINSON's source of supply and would be traveling to obtain additional cocaine.

15.     At approximately 4:10 PM, officers/agents observed a white BMW, bearing Ohio license plate GWV8057, leave from Hollenshade Avenue and travel southbound on Harrison Avenue. I recognized this as COLLINS' vehicle and instructed surveillance officers to follow the vehicle away.

16.     Officers surveilled COLLINS' vehicle as it traveled to Westwood Avenue. Agents/officers observed the vehicle park in the driveway of 1745 Westwood Avenue, Cincinnati, OH. I recognized this as a residence owned, in part, by COLLINS. A few moments later, SA Cameron Rice observed a male, matching the physical characteristics of COLLINS, exit the BMW and walk toward a detached garage on the property. Approximately two (2) minutes later, TFO Josh Schrage observed the BMW exiting the driveway and begin traveling toward 2529

Hollenshade Avenue. At approximately 4:18 PM, agents/officers observed the BMW turn onto Hollenshade Avenue and approach COLLINS' residence. It should be noted, real-time GPS location information collected from COLLINS' cellular telephone traveled in conjunction with the white BMW that traveled from 2529 Hollenshade Avenue to 1745 Westwood Avenue and then returned to 2529 Hollenshade Avenue. Based on my training and experience, COLLINS' cellular telephone traveling with the vehicle and SA Rice observing a male matching COLLINS' description, I believe COLLINS was operating the white BMW that traveled to 1745 Westwood Avenue.

17.    At approximately 4:22 PM, agents/officers observed WILKINSON's vehicle traveling away from 2529 Hollenshade Avenue southbound on Harrison Avenue toward the meeting location. A few moments later, agents/officers observed WILKINSON's vehicle arrive and park next to the CI. Agents/officers then observed the CI exit his/her vehicle and enter WILKINSON's vehicle. Officers/agents monitoring the covert recording device confirmed WILKINSON was the driver of the vehicle.

18.    While seated inside WILKINSON's vehicle, the CI provided WILKINSON $5,000 recorded U.S. currency in exchange for approximately five (5) ounces of cocaine[2]. Following the exchange, the CI exited WILKINSON's vehicle, returned to his/her vehicle and left the area.

19.    Agents/officers surveilled WILKINSON following the exchange. Officers/agents observed WILKINSON leave the meeting location and return directly to Hollenshade Avenue. At approximately 4:32 PM, officers/agents observed WILKINSON's vehicle approach 2529 Hollenshade Avenue. A few minutes later, agents/officers drove passed the residence and

---

[2] - This substance was submitted to the Hamilton County Coroners Laboratory for analysis. This analysis determined the substance contained cocaine and provided a laboratory weight of 138.34 grams.

confirmed WILKINSON's vehicle was parked directly in front of 2529 Hollenshade Avenue and was unoccupied. It should be noted, WILKINSON transported the proceeds from the sale of the controlled cocaine purchase to 2529 Hollenshade Avenue.

20.     Following the controlled purchase, I met with the CI at a neutral location and recovered the suspected cocaine purchased from WILKINSON. The suspected cocaine was processed as evidence and submitted to the Hamilton County Coroner's Laboratory for analysis.

21.     Based on my training and experience, my knowledge that WILKINSON called COLLINS to verify cocaine prices on July 16, 2021, my knowledge that during the controlled cocaine purchase WILKINSON told the CI "he" needed to retrieve additional cocaine, my knowledge that shortly after this conversation COLLINS' vehicle and cellular telephone traveled to 1745 Westwood Avenue and then back to 2529 Hollenshade Avenue, and my knowledge that after COLLINS' return, WILKINSON met the CI to sell him/her five (5) ounces of cocaine in exchange for $5,000 recorded U.S. currency, I believe COLLINS retrieved an amount of cocaine from 1745 Westwood Avenue and transported it to 2529 Hollenshade Avenue in his BMW and provided it to WILKINSON. I also believe based on this information, as well as the fact that WILKINSON transported $5,000 in drug proceeds to COLLINS' residence that COLLINS is WILKINSON's cocaine source of supply and supplied the cocaine sold to the CI.

**EXECUTION OF SEARCH WARRANTS AT LOCATIONS USED BY DTO:**

22.     On August 10, 2021, TFO Josh Schrage appeared before Hamilton County Municipal Court Judge Ted Berry, who reviewed and signed a search warrant for COLLINS' residence, 2529 Hollenshade Avenue, Cincinnati, OH 45211. This search warrant established

probable cause[3] to believe Jimmie COLLINS and/or Maria WILKINSON was using the location to distribute and/or store the proceeds from the distribution of cocaine.

23.     On August 11, 2021, the Cincinnati Police Department executed the search warrant at 2529 Hollenshade Avenue, Cincinnati, OH 45211. During the execution of the search warrant at 2529 Hollenshade Avenue, agents/officers seized items of evidentiary value that included: a SCCY 9mm handgun with a loaded magazine, approximately $50,000 U.S. currency, several large bags containing marijuana, various pieces of drug paraphernalia. It should be noted, of the approximately $50,000 U.S. currency recovered from COLLINS' residence, agents/officer recovered the entirety of the $5,000 recorded buy money from the controlled purchase on August 9, 2021.

24.     Also, during the execution of this search warrant, agents/officers located Jimmie COLLINS and Maria WILKINSON inside the residence. COLLINS and WILKINSON were placed in marked police vehicles and advised of their right to remain silent and/or obtain counsel. WILKINSON chose to speak with agents/officers at that time. I questioned WILKINSON about her knowledge or involvement with COLLINS' second residence, 1745 Westwood Avenue, Cincinnati, OH 45214.  WILKINSON stated she knew COLLINS used that location as a rap studio and that the first-floor of the residence was not occupied and is freely accessed by COLLINS. WILKINSON also stated she had been to this location on several occasions with COLLINS.

25.     Based on the evidence recovered and the statements by WILKINSON about COLLINS' secondary residence, TFO Schrage appeared before Hamilton County Municipal Court Judge Ted Berry, who reviewed and signed a search warrant for 1745 Westwood Avenue, 1st Floor,

---

[3] - The affidavits contained information regarding electronic and physical surveillance, plus controlled purchases, establishing that COLLINS and/or WILKINSON used this residence to further his drug trafficking activities.

Cincinnati, OH 45214. This search warrant established probable cause[4] to believe that COLLINS used this location to facilitate cocaine sales.

26.     On August 11, 2021, with the assistance of the Cincinnati Police Department SWAT team, agents/officers executed the search warrant at 1745 Westwood Avenue, 1st Floor, Cincinnati, OH 45214. It should be noted, this search warrant specifically authorized agents/officers to search the detached garage on the premises.  During the search warrant at 1745 Westwood Avenue, officers/agents recovered the following items of evidentiary value: a Ruger EC9s 9mm handgun, a Springfield XD9 9mm handgun, a Smith & Wesson M&P15 .556 caliber rifle, a large amount of fentanyl[5]. It should be noted, the fentanyl/fluorofentanyl mixture along with the Ruger and Springfield XD handgun were found in the microwave in the first floor apartment of 1745 Westwood Avenue.

27.     I know from the investigation to date that COLLINS and WILKINSON sold cocaine to a confidential informant. I also know, based on my training and experience, the marijuana seized from 2529 Hollenshade Avenue is consistent with marijuana, and that the fentanyl seized from 1745 Westwood Avenue is consistent with fentanyl and/or cutting agents. That, along with the other evidence of drug trafficking—drug paraphernalia, such as digital scales and a vacuum sealer, the seized recorded U.S. currency used for the controlled cocaine purchase found at COLLINS' residence, and the laboratory analysis, among others—leads me to believe that the substance seized from COLLINS' residence at 1745 Westwood Avenue was in fact 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

---

[4] - The affidavits contained information regarding electronic and physical surveillance, plus a controlled purchase, establishing that COLLINS used this location to further his drug trafficking activities.

[5] - This substance was submitted to the Hamilton County Coroner's Laboratory for analysis. It was determined to have contain fentanyl and fluorofentanyl with a laboratory weight of 435.98 grams.

**COLLINS INVOLVEMENT IN VIOLENT OFFENSES**

28.      In January of 2022, TFO Josh Schrage received information from Alcohol, Tobacco, and Firearms (ATF) and Hamilton County (OH) Sheriff's Office (HCSO) investigators about a group of violent drug offenders operating under the name "Strike Life." Investigators believe members of "Strike Life" are involved in the sale of controlled substances as well as felonious assaults and murder for hire.

29.      Investigators stated they were actively investigating the homicide of Charles Lewis that occurred on August 1, 2020. Information obtained from witnesses of this homicide indicated Mr. Lewis was killed after leaving COLLINS' secondary residence, 1745 Westwood Avenue. This location is used as a rap studio and known to members of the group as the "Bolo Mansion." Additionally, investigators stated Mr. Lewis worked for COLLINS and Brandon JAMES. I am aware of Brandon JAMES from previous investigations. These investigations showed JAMES is involved in the sale of controlled substances as well as felonious assaults.

30.      In February of 2022, I met with a reliable and confidential informant (CI #2) to discuss ongoing cases unrelated to COLLINS. CI #2[6] is independent from the original CI in this case. CI #2 has provided information and assistance on previous cases that has led to the seizure of controlled substances, proceeds from the sale of controlled substances, and the arrest of individuals involved in the distribution of controlled substances.

31.      During the discussion, CI #2 mentioned an individual known to him/her as "Big Jim." Based on my training and experience as well as my involvement in this case, I am aware this is COLLINS' nickname. CI #2 stated COLLINS was recently arrested on drug trafficking charges

---

[6] CI #2 has previously been arrested on drug trafficking charges in state court. CI #2 is cooperating with law enforcement on this case for consideration on pending drug trafficking charges.

and that COLLINS and/or COLLINS' associates had potentially identified the CI that cooperated leading to COLLINS arrest in Hamilton County Common Pleas Court. CI #2 also stated an associate of COLLINS told him/her there was a $20,000 "hit" on the person believed to be the informant. Based on my training and experience, I am aware "hit" is a slang term that refers to a payment for killing an individual. Often the "hit" is offered to eliminate a witness or informant from testifying in court against a defendant.

32.     Additionally, while speaking to CI #2, he/she showed me a photograph of an individual that COLLINS and/or COLLINS' associates believed to be the informant. CI #2 stated this photograph was disseminated to him/her via cellular device. My review of this photograph confirms CI #2's statement about COLLINS and/or his co-conspirators attempting to identify the informant on his case and that they were distributing a photograph of the potential informant via their cellular telephones.

33.     Based on my training and experience, I am aware individuals involved in murder for hire schemes will send photographs of their intended victim to numerous people in an attempt to complete the murder. I believe COLLINS and/or COLLINS' co-conspirators used their cellular telephones to distribute this photograph to many people, and that a review of their devices will produce evidence of that fact.

34.     Based on my training and experience, and my knowledge of the manner in which cellular devices operate, I believe evidence of COLLINS' involvement will be found on any cellular device owned or possessed by COLLINS. Based on the information provided by CI #2, my training and experience investigating violent drug traffickers, and my involvement in this case, I believe COLLINS and/or COLLINS associates are attempting to identify, locate, and murder the informant who assisted law enforcement and ultimately led to COLLINS' arrest.

**INDICTMENT AND ARREST OF JIMMIE COLLINS:**

35.     On February 23, 2022, I appeared in Grand Jury in the Southern District of Ohio and presented the case, to include the above facts, against Jimmie COLLINS and Maria WILKINSON. On the same date, COLLINS and WILKINSON were indicted on numerous charges, to include: Narcotics Conspiracy, Distribution of a Controlled Substance, Operating a Drug Involved Premises, and Possession with Intent to Distribute a Controlled Substance. On February 25, 2022, I received a copy of the signed indictment and arrest warrants for COLLINS and WILKINSON.

36.     On March 1, 2022, agents/officers conducted surveillance at Jimmie COLLINS' residence, 2529 Hollenshade Avenue in an attempt to effect his arrest. Within the week preceding this date, I conducted limited surveillance at this location and observed a vehicle registered to COLLINS parked in the driveway.

37.     At approximately 8:15 AM, I established a surveillance position near the residence and observed COLLINS' vehicle parked in the driveway. Officers/agents maintained surveillance at this location for the next several hours. At approximately 12:00 PM, I observed COLLINS exit the front door of the residence and enter his vehicle. I then observed COLLINS travel away from the residence toward Harrison Avenue. Surveillance officers observed COLLINS turn onto Harrison Avenue then travel southbound.

38.     As COLLINS left his residence, I contacted uniformed patrol officers from the Cincinnati Police Department and requested assistance with a traffic stop and the arrest of COLLINS. A few moments later, officers observed COLLINS park in front of Family Dollar,

located at 2435 Harrison Avenue, Cincinnati, OH. While waiting on uniformed officers to arrive, COLLINS exited his vehicle and entered the Family Dollar.

39.     I then requested the uniformed officers to enter the business, locate COLLINS, and place him under arrest pursuant to the indictment and arrest warrant. At approximately 12:16 PM, Cincinnati Police Department Narcotics Unit officers and uniformed patrol officers entered the business and placed COLLINS under arrest.

40.     Following COLLINS' arrest, officers conducted a search incident to arrest and recovered the **Device** from COLLINS' person. The **Device** was then transferred to my custody. I transported the **Device** to the Cincinnati Police Department Narcotics Unit Property Room for safekeeping.

41.     It is my training and experience persons involved in illegal activity such as drug trafficking and violent offenses such as felonious assault or murder for hire use cellular telephones to facilitate their offenses. It is also my experience that cellular devices are likely to contain evidence of their criminal activity, such as text messages arranging the criminal offense or payments, call logs or contact lists which can identify the telephone number of criminal conspirators, photos of criminal activity, such as suspects posing with firearms, proof of completion of an agreed upon murder, illegal drugs, or proceeds from the sale of illegal drugs.

42.     Due to the conspiratorial nature of drug trafficking and violent offenses, I know COLLINS must communicate with his suppliers, customers, and co-conspirators to arrange the sale and delivery of controlled substances, and to arrange the completion of the above described violent offenses. Additionally, based on my knowledge that WILKINSON communicated with COLLINS to facilitate the controlled cocaine purchase in August of 2021, I believe COLLINS

uses his cellular telephone, the **Device**, to distribute controlled substances in the Southern District of Ohio. I also believe the **Device** will contain evidence of COLLINS involvement in the distribution of controlled substances, to include cocaine and fentanyl as well as COLLINS' involvement potential murder for hire schemes.

43. The **Device** is currently in the lawful possession of the Cincinnati Police Department. As described above, it came into the Cincinnati Police Department's possession in the following way: The **Device** was seized incident to Jimmie COLLINS's arrest on a federal arrest warrant and indictment involving a Narcotics Conspiracy, Distribution of Controlled Substances, Operating a Drug Involved Premises, Possession with Intent to Distribute Controlled Substances, and federal firearm offenses. Therefore, while the Cincinnati Police Department might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

44. The Device is currently in storage at Cincinnati Police Department, 801 Linn Street, Cincinnati, OH 45203. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Cincinnati Police Department.

## **TECHNICAL TERMS**

45. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephones) is a handheld wireless device used for voice and data communication device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log", which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. The capabilities include: storing names and phone numbers in electronic "address book;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Cell phones can also be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Cell phones typically contain programs calls apps, which, like programs on a personal computer or tablet, perform different functions and save data associated wit hthose functions. Cell phones may be considered "smartphones" when they possess some or all of these capabilities.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

46. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

47. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

48. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

49. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

50. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

51.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Although the target of this investigation, COLLINS, is aware the case is being investigated, they are not aware of the full scope of the government's attempts to obtain evidence in this case. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*Brandon R. Cook*

[Brandon R. Cook]
Task Force Officer
[Drug Enforcement Administration]

Subscribed and sworn to before me
on March 4, 2022: **via electronic means, specifically Facetime video.**

*Stephanie K. Bowman*

UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

The property to be searched is a black and blue Apple iPhone, electronically encoded with SIM code number 8901260041923798797F, as pictured in Attachment A, hereinafter the "Device."  The Device is currently located at Cincinnati Police Department, 801 Linn Street, Cincinnati, OH 45203.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

 

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of possession of controlled substances (21 USC 841(b)(1)(A) and 21 USC 841(C) and murder for hire (18 USC 373 and 18 USC 1512) and involve Jimmie COLLINS since he obtained The **Device**, including:

      a.   Any records, information, data, and communications related to the delivery and sale of cocaine and/or fentanyl by Jimmie COLLINS and members of the drug trafficking organization;

      b.   Any records, information, data, and communications relating to the attempted identification, location, and potential murder of the informant against COLLINS;

      c.   All records, information, data and communication relating to COLLINS' possession, storage, use, or access to firearms and ammunition;

      d.   Communications between COLLIS and/or WILKINSON to third parties related to obstructing, impeding, interfering, or influencing the investigation and judicial proceedings of COLLINS;

      e.   lists of customers and related identifying information;

      f.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      g.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      h.   any information recording Jimmie COLLINS's schedule or travel from the obtainment of The Device to the present;

      i.   all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.